Good morning, members of the court. My name is Steve Hormel. I am here representing Ian Harris in this appeal. It's an appeal from a sentencing proceeding in the district court, and it really involves a combination of factors. I think I can boil it down to just a couple of propositions. A combination of factors were Mr. Harris was deprived his right to counsel, and also the issue relating to the Rule 11 violation I think is worthy of mention because of the issue the government raised relating to district courts getting involved in plea negotiations, either pre-plea or post-plea, and I think the Garfield case brings that issue directly into focus. But the four factors that I think that are here that had affected Mr. Harris' right to counsel at sentencing is the fact that there was a Rule 32 violation. The district court required the pre-sentence report to be disclosed only 20 days prior to the sentencing hearing. I think it was in fact disclosed 25 days prior to the sentencing hearing. The distance between defense counsel and Mr. Harris was approximately 150 miles from the Spokane office location of defense counsel and of Mr. Harris. So you combine the Rule 32 violation, the shortened time period, with the distance of defense counsel having to travel in order to go through the sentencing procedures, the pre-sentence report with Mr. Harris, and it shows that Mr. Harris didn't have the pre-sentence report until right around the time the objections were due because of the shortened time. So it gave him very restricted time. The third factor is the district court's failure. Once the district court was confronted with Mr. Harris' motion to withdraw, with defense counsel's motion to withdraw, and request for continuances and more time, the district court's failure to grant a continuance to allow Mr. Harris and Mr. Peven or new counsel to discuss the matters that were of concern to Mr. Harris I think is a factor, again, that deprived Mr. Harris of his right to counsel. I believe the district court's failure to grant both defense counsel's request and Mr. Harris' request for assistance of counsel, I think all combined, even though I raised them in separate issues, I think the combination of these issues actually warrant a remand for resentencing. I'm not asking the court at this time to permit Mr. Harris to withdraw. I'm asking the court to remand this matter for resentencing and giving new counsel time to consult with Mr. Harris to determine whether or not he wants to continue or persist in a motion to withdraw. Counsel, how is Mr. Harris prejudiced by this? Even if all these errors were actually errors, how is Mr. Harris prejudiced? I think the blatant prejudice is his denial of counsel. In fact, the record shows that after Mr. Harris filed the motion to terminate Mr. Peven and after Mr. Peven moved to withdraw his representation, that Mr. Harris essentially, even though Mr. Peven was there, was essentially representing himself. Mr. Harris actually drafted the objections to the pre-sentence report after the judge provided Mr. Harris the final pre-sentence report and the addendum. It was Mr. Harris that actually, what was submitted by defense counsel was Mr. Harris' handwritten notes. It wasn't, and then at the sentencing hearing, the actual sentencing hearing, although defense counsel did make remarks and ask for the 20-year sentence, the court and Mr. Harris were the ones that were engaged in the discussion relating to the objections. And I think the other prejudice is... You haven't objected to anything. I mean, we don't have in front of us any statements that say these paragraphs of the pre-sentencing report are factually incorrect. I'm having trouble figuring out what difference all of this makes. The difference it makes, Your Honor, is that the failure to continue, at least what I'm seeing from the record, is that Mr. Harris asked for the RDAP program, which was granted, but was also claiming that part of the reason he was involved in these offenses was because he was an abuser of controlled substance. Abuser or not, he has a very rich history. He does. And so I'm having trouble figuring out what any of these objections would have to do with the sentence imposed. I mean, you're asking for resentencing, only you're really asking for a reconsideration of the withdrawal, the plea, and it's really not clear what your client wants to do. And I see no indication that your client really, in knowing what he came to know, which is that the alternative he was facing was the government charging him, based on his rich criminal history, with a mandatory life sentence, what there was more for him to think about and why more time was going to be necessary and what a new counsel would have brought to the table. I mean, this seems all very theoretical, but not very real. Well, it actually is real because Mr. Harris did not, essentially, did not have the assistance of counsel in the fullest degree that he was entitled to to go through all of these issues. In fact, the court gave a very short time period for him to discuss these matters and with a counsel that he continued to express concerns with about the diligence of his counsel. With counsel telling the court that he's concerned because there is this impasse between defense counsel and the client. So the prejudice is that he doesn't have the full protection of assistance of counsel in order to make what may have been the right decision in this case, but he was entitled to at least the time to review it and to have a new counsel or a continuance or a sufficient continuance long enough for he and Mr. Piven to maybe mend their fences, but they weren't going to be mended in this short time period. So Mr. Harris was essentially left to his own accord because of the circumstances and all the factors involved in the case. So that is prejudice to Mr. Harris. But isn't Mr. Harris better off by sticking with that plea and not withdrawing it given the potential of the 851 being filed? He may well be. And I do know this because I did ask for additional time in this appeal to be able to review all the discovery and look at other issues that may be involved in the case. And there were discussions about suppression issues and that sort of thing during the sentencing proceedings. New counsel, I think, would have to go through all of that again because I know that those are issues, at least in the record, that were of concern to Mr. Harris also. It may well be that this plea agreement is a plea agreement that Mr. Harris ultimately decides on, but it will also be with an attorney and client relationship where the mitigating evidence relating to drug abuse. I understand that Mr. Harris has not a good record. I understand that. But I also understand that the full amount of the mitigation that could have been presented to the court relating to his drug abuse history wasn't there for consideration. So those are the things in combination that I believe warrant a remand and for Mr. Harris with new counsel to be able to go and review all of those things before. Because he does have a – the judge indicated he would grant his motion to withdraw if he persisted in it. But he also said that if you persist in it, I'm going to make you represent yourself. He said that at the second ex parte hearing. And then he said at the next hearing that if you choose to go to sentencing, you're stuck with Mr. Peevan. Only if you choose to withdraw your guilty plea am I going to then afford you new counsel. So he put Mr. Harris in a real box. And nothing, I think, substantively that was raised by Mr. Harris was actually resolved in the process. And I think that's the prejudice that Mr. Harris suffered. And I do believe that counsel with new – or new counsel given sufficient time to go through all these nuances may well end up in the same place, same plea agreement. But I would ask the court to, under these circumstances, remand the case for resentencing with time to allow Mr. Harris to decide if he wants to persist in the motion to withdraw his guilty plea. Do you want to reserve your time? Yes, Your Honor. Thank you. Thank you. Please, the court and counsel, my name is Caitlin Bonsgard, and I represent the United States in this matter. I would like to outline the issues that are currently before the court in brief fashion. I know the court has reviewed all the extensive materials in this matter. It's the United States' position that the district court did not plainly err under Rule 11 by answering the defendant's questions. And there are several points in that analysis that I think are significant. Number one, we're asserting there is no Rule 11 violation. If you look at the context of Rule 11 and the purpose of Rule 11, as the Supreme Court has reminded us in De Villa recently, Rule 11 is a prophylactic measure and is not compelled by due process or the Constitution. This court has previously reminded that Rule 11 is not to be analyzed with illogical rigidity. And I would also note that this court's Frank case has been cited nationwide, to include very recently across the U.S., for the proposition that Rule 11 is not meant as a trap for the imperfect articulated remarks. So if we look at Rule 11, Rule 11 looks at or focuses that a judge should not participate in plea discussions. And the judge should remove him or herself from the discussions about plea agreement that has not been presented in open court. And I think that's a significant distinction here in this case. Rule 11 is there to help keep judges from shaping the plea bargain that the judge would find reasonable or appropriate in that case, instead preserving that judicial impartiality to judge the plea agreement as presented to the court. So in this context, these conversations that occurred that the defendant claims are erroneous occurred two months after the plea agreement was discussed and offered in open court and entered into by the court. Well, how do you cancel, how do you distinguish the Garfield case? I think the Garfield case is difficult to distinguish, although not impossible. I would say the Garfield case occurred in a pre-de via context. There was no discussion of invited error. Further, I haven't been able to find a case that cites Garfield in the post plea context since its decision in 1993. And I think given the way the other circuits are also shaping this analysis, which would include, I want to make sure I get the citation correct, the 5th, 10th, and 6th circuits also draw this bright line rule that basically says pre-plea. We have Garfield. We have Garfield in the 9th circuit. And we can't just disregard it. And its principle seems sound in the context of the defendant making a decision, without counsel possibly, whether or not to withdraw his plea. I happen to think the district court judge sincerely was giving his best advice to this defendant that he shouldn't withdraw the plea, but he's still telling him not to withdraw the plea. And that seems to run contrary to Garfield. It would seem to run contrary to Garfield. However, I would note just the context in which Garfield was decided. And it's kind of sat there since 1993 and not really done anything respective to that decision. But if we look at Frank, which was decided a year later in 1994, and the discussion that there needs to be flexibility in comments and discussion by the district court in the post-plea context, well, Frank said pre-plea, but the discussion would be more applicable in the post-plea context, especially when looking at how some of the other circuits have latched on to Frank and those principles, as well as making that bright line rule in their circuits about the pre- versus post-plea distinctions. But I also think it is worth noting that as a matter of like a policy consideration, looking at the Gonzalez-Melancor case, which talks about that was in a post-plea context, but that was a specific instance of a district court judge looking at a defendant in sentencing and saying, if you do this, I will do this. If you agree at an appellate waiver, I will give you this sentence. And that is so similar to a plea discussion that it would make sense to apply in the unusual context, as the Ninth Circuit said in that matter, to apply the Rule 11 type of prohibition on that type of conduct. But I think in the post-avia context of Rule 11 violations, I don't believe that it should extend automatically to the post-plea context. But even if we assert that it was an error, it does apply post-plea, and the comments were an error, I would submit that the comments were an invited error. If you look at the record, Mr. Harris acknowledged that he knew the information, that he was facing a possible life sentence, possible mandatory life sentence, and he persists repeatedly in the line of inquiry with the district court. It is always the defendant who brings it up and says, what about these 851s? How are they applicable in my case? And he asks that at each and every one of the ex parte hearings. He's the one to bring it up and ask. It's not the district court posturing or saying something to the effect of, you know, if you do this, you're going to face a mandatory life. It's Mr. Harris saying, what about this? Am I facing life? Is this real for me? And the district court provides him factually accurate information. And those are found on ER-76, ER-96 and 97, ER-106, and ER-107. And there's a particular quote that I like from Mr. Harris on ER-107 saying, my only hitch since the beginning has been, show me these 851s. Show me how they are a real threat to me. The court responds and says, yes, they are. They do apply for you. The defendant then wanted to discuss the Hohler Memoranda, which provided prosecutors guidance in filing of the 851s, whether that would be appropriate. The court says this does not have the force of law. That's just guidance from the attorney general. That's at ER-108 and 109. The defense attorney says at ER-112 that he had discussed all this matter with Mr. Harris. So that seems to resolve the inquiry. But yet, in the next ex parte hearing. Well, but that raises a couple questions. For one, it's emphasized that Mr. Harris knew about all of this and yet he persisted. So at one point when the government argues is there a reasonable possibility or probability he actually would have withdrawn his plea, it's hard for me not to answer that question, yes, given that he did continue to pursue the inquiries. Now, we don't even have a clear statement today as to what he would do, and that may be a problem for Mr. Harris. But at least the fact that he has continued to pursue it, it's not clear to me what he has to gain unless he's given serious consideration to the possibility of withdrawing the plea and taking his chances at trial. So why shouldn't we say, okay, there's at least a reasonable possibility of that? Well, I think if we go to the next ex parte hearing at ER-142 and 143, the defendant talks about the fact that he wants a better deal. He says, so can I hold on to this C1C agreement and get a better deal? And the district court says that's a plea discussion. I can't engage in that inquiry. That's something that you have to discuss with the government. So I think even in that context, he would be stating, I want a better deal, not, well, I want to go to trial. He's saying, I need to get a better deal, and that's what his focus was in that matter. But I think even if we – Well, we'd all like a better deal. And it's easy to say it's easy to negotiate a better deal, but is there any reason for him to believe that he could get a better deal? I don't know what his thought process was that or his conversations with his attorney on getting a better deal was. Certainly he could have hoped for one. I don't believe he would have ultimately received one. But even if the invited error doctrine doesn't resolve that inquiry, under the Myers doctrine, even if there is error, the defendant has to show that but for the error he would have gone to trial, and that kind of ties into those comments that I just made. And the error has to be such that it undermines confidence in the proceedings. Arguments that arguably could have had an impact are not sufficient under that Myers case law standard, and you look at the totality of the circumstance to include the strength of the government's case. And as I've outlined in my briefing and in the plea agreement that's attached, there's multiple cooperating defendants. There's a controlled by, search warrants. There's a cache of gun, cache of ammo, detonator core, blasting cap, stash of controlled substances, explosives, the potential for a 924C, so on and so forth. And Myers still goes one step further for a fourth analysis that even if the defendant makes all of these daunting showings, these first three showings, the court still has the option to decline to exercise its discretion because the defendant has to show it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. And there's just one thing I wanted to highlight about defense counsel's comments before I run out of time here. I don't think this defendant was denied counsel. If you look back in the record, ultimately the continuous ask for was one week. Judge Quackenbush gave him three days after engaging in a week's worth of ex parte hearings. There was two months to prepare for sentencing. The court offered to move it out but then was reluctant to do so when it was clear that the only thing that would be accomplished is replowing the same ground over and over again. And ultimately the defendant chose to withdraw his motions to terminate his defense counsel and his motion to withdraw his guilty plea so there was no opportunity for Judge Quackenbush to make findings on those because ultimately he withdrew. The defense attorney proffered that he had met with a client every day to include twice on Sunday and estimated that the approximate meeting time was 40 minutes each. So I think based on the totality of those circumstances, he was not denied the right to counsel. And further, Judge Quackenbush, even at the sentencing hearing, was like, tell me why Mr. Peeben should be removed. Articulate for me the basis of these. And in light of that, Mr. Harris stopped persisting at it and said he wanted to collude to sentencing. Thank you. Thank you, Counsel. I believe that the record sites that were given by Ms. Bonsgaard are insightful in that it's Mr. Harris, without counsel, that's addressing the court. And that's what I believe is the biggest structural error in this case. Well, he's brought a motion to withdraw counsel and counsel himself has triggered it. So I'm not sure who else. If something else had happened and if the appointed counsel had stepped up, Harris's complaint would be, but that's not the guy I wanted. So who else is the judge supposed to talk to at that point? Well, that's true, except that the judge isn't addressing the motion to withdraw at that point. He's addressing whether or not he should. He's addressing whether or not two things, whether or not there should be new counsel, and both Mr. Harris and defense counsel are asking the court to appoint new counsel. And the second step in that is the motion to withdraw. So Mr. Harris is essentially left without counsel because his counsel is asking to be removed at that point also. And then I think one of the factors in this case that brings Garfield right into focus is this was an 11C1C agreement. Neither party is bound by an 11C1C agreement, citations in my reply brief, until the court accepts it. And the defendant has the right to move to withdraw a plea and based on any fair and just reason. And in this case, Judge Quackenbush found there was a fair and just reason. He just didn't want to allow it. He was, I think, trying to protect Mr. Harris from himself, but he wasn't giving the process the time to work so that Mr. Harris was making a fully informed decision on what he wanted to do, and I think that's where the prejudice is. Thank you very much, counsel, both to you for your argument today.
judges: Wardlaw, Clifton, Owens